JEG:RMT
F.#2010R01939

M10-1169

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against -

CHRISTOPHE FELIX,

           Defendant.

- - - - - - - - - - - - - - - - -X

COMPLAINT AND AFFIDAVIT IN
SUPPORT OF ARREST WARRANT

(T. 18, U.S.C., § 1349)

EASTERN DISTRICT OF NEW YORK, SS:

      SEAMUS CLARKE, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

      Upon information and belief, on or about and between August 1, 2007 and October 11, 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant CHRISTOPHE FELIX, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice to transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States

Code, Section 1343.

(Title 18, United States Code, Section 1349.)

The source of your deponent's information and the grounds for his belief are as follows:

1.  I have been a special agent with the FBI for approximately seven years. Through my training, education and experience, I have become familiar with the manner in which mortgage frauds are conducted and the efforts of persons involved in such activity to avoid detection by law enforcement.[1]

2.  An ongoing FBI investigation has revealed that the defendant CHRISTOPHE FELIX was a participant in a scheme to defraud mortgage lenders and steal portions of the proceeds of the mortgage loans. In the most general terms, that scheme worked as follows. FELIX, together with others, would recruit individuals with good credit scores ("straw buyers") to purchase residential properties in the New York City area. Once a straw buyer was identified, FELIX and others would collect personal and financial information to be used on the mortgage applications submitted to banks and mortgage companies. To induce lenders to extend loans, these applications would contain various false statements regarding the straw buyers' salary and other financial information. In addition, to increase the profitability of the

---

[1]  Because the purpose of this Complaint is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

fraud, FELIX and others would secure appraisals that falsely inflated the properties' values. FELIX and others would also find individuals to sign documents known in the mortgage industry as "verifications of rent" ("VORs") for the straw buyers in support of the loan applications. Those VORs typically would state that the straw buyers were current on their rent payments, although the signatory would not actually be the straw buyer's landlord.

3. During the course of my investigation into the defendant CHRISTOPHE FELIX and others, I interviewed a straw buyer ("SB") who purchased a property in Brooklyn, New York (the "Property") on or about October 11, 2007. That property was purchased through a loan of approximately $561,900.41 from HSBC Bank USA sent via interstate wire transfer on or about October 11, 2010.

4. SB told me that she was first approached in or about 2007 by a co-conspirator ("CC") who asked her whether she would be willing to "loan" out her credit for a fee. SB agreed, and was paid $7,000 by CC in connection with the purchase of the Property. Upon reviewing the Form 1003 Uniform Residential Loan Application submitted in connection with the loan for the Property, SB confirmed that she signed the document, but stated that she did not fill it out herself and did not know who had filled it out. SB also stated that the Form 1003 contains false

information. For instance, the Form 1003 states that SB's monthly income in October 2007 was $11,125, meaning SB's annual income was approximately $133,500, when in fact SB was making only between $32,000 and $36,000 annually at that time.

5. SB said that she does not know the defendant CHRISTOPHE FELIX. However, among the checks prepared at the closing for the Property was one check for $21,252.33 made out to "Kenscoff Consultants Inc." That check was deposited into a Commerce Bank account for Kenscoff Consultants Inc., 224-44 93rd Road, Queens Village, New York 11428. FELIX is the signer for that account, according to bank records obtained as part of this investigation.

6. SB subsequently received a notification from the New York City Housing Authority that an application for rental of the property under Section 8 had been approved.[2] However, SB said she did not prepare such an application. I have spoken with the New York City Housing Authority and confirmed that at least four checks made out to SB were sent to 224-44 93rd Road, Queens Village, New York 11428, which, as noted above, is also the address for Kenscoff Consultants Inc. In addition, law

---

[2]  "Section 8" refers to the Housing Choice Vouchers Program. That program is operated by the federal government to provide housing for individuals who are living in poverty, as well as the elderly and disabled. The program is often called "Section 8" in reference to the portion of the U.S. Housing and Community Development Act of 1974 under which the original subsidy program was authorized.

4

enforcement databases show that 224-44 93rd Road, Queens Village, New York 11428 is an address of the defendant CHRISTOPHE FELIX. The backs of those checks appear to bear SB's endorsement and the endorsement of another individual whose signature I have not yet identified. SB told me that she neither endorsed nor deposited those four checks. SB also told me that she subsequently arranged to have the Section 8 checks addressed to her and began depositing those checks in her account.

7. SB's loan application includes a VOR dated September 18, 2007 stating that SB was current on her rent payments. That document lists a cooperating witness ("CW1") as SB's landlord. CW1 has confirmed that the signature on that VOR is his and that he was never SB's landlord. CW1 told me that, while he does not specifically remember signing the VOR for SB, he signed fraudulent VORs at the request of the defendant CHRISTOPHE FELIX on numerous occasions.

8. Another cooperating witness ("CW2") prepared the appraisal for the Property submitted in support of the loan application for SB. That appraisal listed the Property's value as $630,000 as of August 1, 2007. CW2 told me that he recalls meeting the defendant CHRISTOPHE FELIX outside the Property, and FELIX instructed him, in sum and substance, to inflate the value of the Property at that time. CW2, in reviewing the appraisal for the Property, estimated that his appraisal overstated the

value of the Property by between $80,000 and $100,000.

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued for the defendant CHRISTOPHE FELIX so that he may be dealt with according to law.

_____
SEAMUS CLARKE
Special Agent
Federal Bureau of Investigation

Sworn to before me this
7th day of October, 2010

GE